

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-2006

# USA v. Dragon

Precedential or Non-Precedential: Precedential

Docket No. 05-4906

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Dragon" (2006). *2006 Decisions.* Paper 1.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 05-4906

————

UNITED STATES OF AMERICA

v.

SHALON DRAGON,
Appellant

————

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Criminal No. 05-470)
District Judge: Honorable Faith S. Hochberg

————

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 13, 2006

Before: FUENTES and VAN ANTWERPEN, Circuit Judges,

and PADOVA,*
<u>District Judge</u>.

(Filed December 29, 2006)

Richard Coughlin, Federal Public Defender
K. Anthony Thomas, Assistant Federal Public Defender
Louise Arkel
Office of the Public Defender
972 Broad Street, Fourth Floor
Newark, New Jersey 07102
        *Counsel for Appellant*


Christopher J. Christie, United States Attorney
George S. Leon, Chief, Appeals Division
Eric H. Jaso, Assistant United States Attorney
Office of the United States Attorney
970 Broad Street
Newark, New Jersey 07102
        *Counsel for the United States*

_____
*The Honorable John R. Padova, District Judge of the Eastern
District of Pennsylvania, sitting by designation.


____

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Defendant Shalon Dragon contends his criminal sentence was unreasonable under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because the District Court did not adequately consider the so-called parsimony provision of 18 U.S.C. § 3553(a)[1] in reaching his sentence. He also challenges the addition of two criminal-history points assessed to him upon the District Court's finding that Dragon committed the crime of conviction while on probation. We have jurisdiction to review Dragon's sentence pursuant to 18 U.S.C. § 3742(a). *See United States*

———

[1]Courts have dubbed the prefatory language of 3553(a) "the parsimony provision." This provision states: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The purposes set forth in paragraph (2) include:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;

and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

*v. Cooper*, 437 F.3d 324, 327 (3d Cir. 2006). For the reasons set forth below, we will affirm.

## I.

On June 13, 2005, pursuant to a plea agreement, Dragon pleaded guilty to one count of unlawful use of a means of identification of another with the intent to commit a felony in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D). His conviction stemmed from an identity theft and fraud scheme in which Dragon and his co-defendant, Casmore Durham, procured and used false identification to charge merchandise and gift cards to the accounts of 43 Macy's credit card holders at Macy's department stores in New Jersey, New York, and Pennsylvania. This scheme, which lasted from January 2001 until Dragon's arrest in December 2003, resulted in $106,990.23 worth of loss to Macy's.

On December 19, 2003, Dragon and Durham were stopped by an officer of the Port Authority of New York and New Jersey Police Department in Jersey City, New Jersey after the officer received a complaint about a black Lexus by a NJ Transit bus driver and then observed a black Lexus driving erratically. After pulling the car over, the officer specifically questioned Durham, the driver, about the Macy's packages in the back seat. Durham first said he bought the items in New Jersey and then changed his story, telling the officer he bought the items in Pennsylvania. Dragon and Durham were taken into custody and then arrested when a check revealed that each had two outstanding warrants. A search of the car revealed the following items: several

fictitious New York State non-driver identification cards in the names of various individuals but containing either Dragon or Durham's picture; records titled "Mount Sinai Medical Center" listing names that matched those on the identification cards, as well as additional identifying information, such as addresses, dates of birth, and social security numbers; receipts from Macy's department stores located in New Jersey, New York, and Pennsylvania; nineteen boxes of Timberland boots; five Macy's shopping bags containing new merchandise; and one shopping bag containing two cellular phones.[2]

On May 1, 2004, Dragon provided a statement confessing the details of the scheme. He stated Durham obtained the personal information of 45 hospital patients from a contact he had at Mount Sinai Medical Center. Dragon and Durham then obtained false identification cards from photo stores in New York City, reflecting the patients' names and identifying information. They would then use the false identification to charge merchandise and gift cards to the real account-holder at Macy's stores in New Jersey, New York, and Pennsylvania.

Dragon and the government entered into a plea agreement with the following stipulations: Dragon would be sentenced pursuant to the United States Sentencing Guidelines ("the guidelines"); the applicable guideline was

---

[2]The search also revealed twenty-eight clear small glassine bags placed in a larger glassine bag. Jersey City Municipal Court took possession of this evidence for a separate adjudication.

§2B1.1, triggering a base offense level of six; an eight-level enhancement applied based on the amount of loss (more than $70,000 but less than $120,000); a two-level enhancement applied based on the number of victims (ten or more); a two-level enhancement applied based on the use of sophisticated means to commit the offense; and a three-level reduction applied for Dragon's acceptance of responsibility.

In the Presentence Investigation Report ("PSR"), the probation officer assigned Dragon a total offense level of 15 and a criminal history category of V. In calculating Dragon's criminal history category, the probation officer added a two-point enhancement because Dragon had committed the offense of conviction while on probation. This calculation resulted in a recommended guidelines range of 37 to 46 months' imprisonment.

On October 25, 2005, the District Court held a sentencing hearing at which Dragon and the government agreed that 37 to 46 months was the appropriate guidelines range. Dragon argued for a sentence of 37 months based on the fact that he is a young man who would be deported to Grenada at the end of his sentence, and because he needed to start earning a livelihood through lawful conduct. Arguing for a sentence within the guidelines range, the government emphasized the complexity of the fraud scheme, the vulnerability of the victims, and Dragon's lengthy criminal history of fraud offenses.

After hearing from Dragon's counsel, Dragon himself, and the government, the District Court imposed a sentence of

44 months, near the top of the guidelines range. In imposing sentence, the District Court commented on the complexity of the fraud scheme and the harm caused to victims of identity theft. Moreover, the District Court emphasized the lenient sentences Dragon received for similar offenses in the past and the consequent need to sentence Dragon to "a serious term of imprisonment" so that he would "learn how to do honest work for an honest day's pay." App. at 30. The District Court twice acknowledged Dragon's request for leniency. It first stated, "Mr. Dragon, you're right you're a young man, but you're a young man that's found a pretty nifty way to get extra cash with very little danger to yourself." *Id.* at 29. The District Court later declared, "I also don't believe that this is the first time you've stood before a court, said you're a young man, said you've made a serious mistake, asked for leniency and asked for another chance." *Id.* In reaching the sentence imposed, the District Court expressly stated that it had "considered the Sentencing Reform Act of 1984 . . . the appropriate guidelines range . . . and all the factors in Section 3553(a)." *Id.* at 30.

II.

A.

Dragon claims his sentence is unreasonable under *Booker* because the District Court failed to adequately consider the parsimony provision of 3553(a), which directs the court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes specified in the statute. Because Dragon did not raise this objection at the

sentencing hearing, we review his claim for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Under this standard, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *Olano*, 507 U.S. at 732 (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). An error is a "[d]eviation from a legal rule[,]" and an error is "plain" if it is "clear" or "obvious." *Id.* at 732-33, 734. Generally, an error affects substantial rights when it is prejudicial, i.e., it "affected the outcome of the district court proceedings." *Id.* at 734. Moreover, even if such an error is found, "the court of appeals has the authority to order correction, but is not required to do so." *Id.* at 735. We should exercise our discretion to correct the error only if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed.2d 555 (1936)).

The District Court did not commit error, let alone plain error, in reaching Dragon's sentence. In *Booker*, the Supreme Court directed the Courts of Appeals to review a District Court's imposition of a criminal sentence for reasonableness. 543 U.S. at 261. Subsequently, in *United States v. Cooper*, we established the framework for such a review stating, "we must first be satisfied the court exercised its discretion by considering the relevant factors." 437 F.3d at 329 (citation omitted). We explained that the court is not required to discuss and make findings as to each of the § 3553(a) factors "if the record makes clear the court took the factors into account in sentencing." *Id.* (citation omitted). The court need

only discuss those grounds properly raised by the parties at the time of sentencing. *Id.* This means counsel for the parties should clearly place the sentencing grounds they are raising on the record at the time of the sentencing hearing.[3] The court is not required to manufacture grounds for the parties or search for grounds not clearly raised on the record in a concise and timely manner.

Moreover, district court judges are not required "to routinely state by rote that they have read the *Booker* decision or that they know the sentencing guidelines are now advisory." *Id.* In similar fashion, judges need not routinely state that they have read the entire guidelines manual or all policy statements of the United States Sentencing Commission. As we stated in *Cooper*, "[t]here are no magic words that a district judge must invoke when sentencing," as long as the record shows "that the court considered the § 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record." *Id.* at 332; *see also United States v. Charles*, 467 F.3d 828, 831 (3d Cir. 2006). Courts need only "'state adequate reasons for a sentence on the record so that [we] can engage in meaningful appellate review.'" *Charles*, 467 F.3d at 831 (quoting *United States v. King*, 454 F.3d 187, 196-97 (3d Cir. 2006)). In sum, we will not elevate form over substance.

---

[3]This does not mean that a court could not, by order or local rule, require parties to make a written submission of all sentencing grounds they plan on raising prior to a sentencing hearing.

Following the reasoning set forth in *Cooper*, we have rejected an argument that the District Court is required to articulate "why a low-end Guidelines-range sentence . . . was insufficient to meet § 3553(a)(2)'s penological goals." *Id.* at 833. To this end, we hold that district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). We note that the First Circuit considered this issue and reached the same result in *United States v. Navedo-Concepcion*, stating, "we do not think that the 'not greater than necessary' language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate." 450 F.3d 54, 58 (1st Cir. 2006). As we stated in *Cooper*, we review sentences for reasonableness and look to the record to determine whether the court adequately considered the relevant provisions of § 3553(a) and any arguments properly presented by the parties which have legal merit and a factual basis in the record.

After considering the parties' arguments at length, the District Court imposed a sentence near the top of the guidelines range, 44 months. The record shows the District Court expressly mentioned § 3553(a), and the Court's discussion was consistent with the relevant provisions of § 3553(a). The District Court expressly acknowledged Dragon's request for leniency and addressed his argument that a lighter sentence was appropriate because of his youth. In imposing a higher sentence, the District Court emphasized Dragon's long history of fraudulent criminal conduct and the fact that Dragon had been given "a second chance" by various

-10-

courts "over and over again." App. at 30. In light of his failure to take advantage of this past leniency, the District Court found it necessary to sentence Dragon "to a serious term of imprisonment." *Id.*

On this record, we find the District Court gave "meaningful consideration" to the relevant provisions of § 3553(a). *Cooper*, 437 F.3d at 329. We afford deference to the District Court because it is "in the best position to determine the appropriate sentence in light of the particular circumstances of the case." *Id.* at 330 (citation omitted). And, we are mindful that sentencing judges, who "normally state and resolve sentencing issues from the bench," make remarks that "are unlikely to be a perfect or complete statement of all of the surrounding law." *Id.* at 330 n.8 (internal quotations and citations omitted).

### B.

Dragon also claims his sentence must be vacated because the District Court's finding that he committed the crime of conviction while on probation was neither admitted by him nor found by a jury beyond a reasonable doubt. This, he claims, violates his Sixth Amendment rights. What Dragon fails to realize, however, is that the remedial opinion in *Booker* alleviated this constitutional problem by making the guidelines advisory. After *Booker*, only those facts that increase the *statutory* maximum penalty to which a defendant is exposed must be admitted by the defendant or found by a jury beyond a reasonable doubt. Because the guidelines are no longer mandatory, the statutory maximum is the maximum

penalty provided for in the United States Code. *See United States v. Gunter*, 462 F.3d 237, 243 (3d Cir. 2006) (stating that post-*Booker*, "district courts may fact-find to increase sentences beyond the Guidelines range provided they are within the statutory minimum and maximum dictated by the United States Code"). And, "[a]s before *Booker*, the standard of proof under the guidelines for sentencing facts [that do not increase the statutory maximum] continues to be preponderance of the evidence." *Cooper*, 437 F.3d at 330 (citation omitted).

Here, the District Court found by a preponderance of the evidence that Dragon committed the crime of conviction while on probation. This finding increased the guidelines range from 30 to 37 months to 37 to 46 months. Dragon was ultimately sentenced to 44 months. Significantly, the District Court's finding did not increase Dragon's sentence beyond the statutory maximum of 15 years' imprisonment provided for in 18 U.S.C. § 1028(b)(1)(D). Therefore, his sentence did not violate the Sixth Amendment.

## III.

For the foregoing reasons, we conclude that the District Court's sentence was reasonable under *Booker* and *Cooper*, and did not violate Dragon's Sixth Amendment rights. Accordingly, we will affirm the judgment of sentence.