

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-9-2008

# USA v. Atkinson

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3155

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Atkinson" (2008). *2008 Decisions.* Paper 384.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/384

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3155
_____

UNITED STATES OF AMERICA,

Appellee,

v.

TONY D. ATKINSON,
also known as
TONY ATKINS,

Tony D. Atkinson,

Appellant.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00141-1)
District Judge: Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
October 2, 2008

Before: FISHER, CHAGARES and HARDIMAN, *Circuit Judges.*

(Filed:  October 9, 2008)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Tony Atkins[1] appeals his conviction and 210 month sentence following a jury trial

for bank robbery. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and

we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We will affirm.

## I.

Because we write for the parties, we recount only those facts essential to our

decision.

On July 16, 2003, a black male identified as Atkins robbed a PNC Bank office on

Liberty Avenue in Pittsburgh, Pennsylvania. After leaving the bank, the man ran down

Liberty Avenue, turned onto several adjacent streets, and was eventually chased down and

arrested near Seventh and Penn Avenue. Atkins claims that he was wrongly identified as

the bank robber after he collided with a person who dropped a bag of money while

walking down Penn Avenue. Atkins claims that he picked up the bag of money, started

running away, and minutes later was subdued and arrested for a crime that he did not

commit.

_____

[1] We will refer to Appellant Tony D. Atkinson, a/k/a Tony Atkins as "Atkins."
Both the Appellant and the Appellee referred to him as "Atkins" in their submissions to
this Court, and we will follow their naming conventions.

2

Following a jury trial, Atkins was convicted of bank robbery in violation of 18 U.S.C. § 2113(a)(1). He was sentenced to 210 months imprisonment, to be followed by three years of supervised release.

**II.**

Atkins first argues that he is entitled to a new trial because the District Court violated his right to due process when it failed to instruct the jury, or allow Atkins to argue to the jury, that it could infer from the government's failure to produce a bank surveillance tape that the contents of the tape would have supported Atkins's defense of mistaken identification. Atkins also alleges that the District Court improperly placed the burden on him to prove that the surveillance tape existed.

Courts will allow an adverse inference instruction to be given to the jury in cases where "the government fails to produce evidence, and the instruction tells the jury that the failure to produce this evidence creates a presumption that the evidence would be favorable to the defendant." *United States v. Drozdowski*, 313 F.3d 819, 825 n.3 (3d Cir. 2002). An adverse jury instruction will not be given, however, where the evidence was not in the control of the government and actually suppressed or withheld from the defense. *Id*. (refusing to give an "absent witness" jury instruction because the government was not in possession of the witness); *see also Gumbs v. Int'l Harvester, Inc*., 718 F.2d 88, 96 (3d Cir. 1983) (explaining that "it must appear that there has been an actual suppression or withholding of the evidence; no unfavorable inference arises when

3

the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for").

Here, the record is devoid of any evidence that the prosecution had the surveillance tape in its custody and withheld it to frustrate Atkins's defense. Instead, the defense relies on prior statements by the prosecution and by a bank teller that a tape existed and that the prosecution was looking for it. But when the issue of the surveillance tape was discussed at trial, the prosecution represented to the District Court that:

> I quite frankly don't know any one in the case, assistant DA's, detectives, anybody, FBI, who has ever seen this tape. I apologize because there has been lots and lots of talk about it. . . . I'm not sure if the tape really exists or not. I know there was lots of talk about it but I've never interviewed anyone who actually touched the video tape from that bank or who has ever seen it. I've not talked to any prosecutors, state or federal, who have ever seen this tape either but we have also looked diligently . . . .

Although the record suggests that there was confusion over the status of the surveillance tape, this confusion alone does not show that the prosecution had the tape under its control and that it suppressed or withheld it during the trial. Accordingly, we decline to find that Atkins's due process rights were violated when the District Court refused to instruct the jury that it could infer that the contents of the video tape would have supported the defense.

Nor do we find that the District Court precluded Atkins from presenting a defense of misidentification. During closing arguments, the District Court allowed Atkins's

4

attorney to tell the jury that it could draw an adverse inference from the missing

surveillance tapes. Atkins's attorney told the jury:

> to the extent that there were cameras in that bank and we know there were cameras in that bank based on Tabatha Gross' testimony, we also know that she changed the tape every morning. That was her job and she had testified she changed the tape that morning. The government did not produce anybody to come in and tell you if the tape wasn't working that day, if the cameras weren't working that day. Why was there never a tape? Nobody has ever come to explain, first of all, whether a tape exists but why a tape wouldn't exist. . . . [T]he government has the burden and it carries that burden.

Before jury deliberation began the next day, the Court instructed the jury:

> The existence or non-existence of a tape is a question of fact, and it is for you, and you alone, to decide. . . . You will decide from the evidence you heard or the lack of evidence whether or not a tape exists and how important that fact is to your decision in this case. . . . [Y]ou may or may not, depending on what you find credible in this case, draw any inferences suggested by [Atkins's attorney], in her closing argument with respect to the video tape and with respect to anything else.

Thus, Atkins was not precluded from arguing to the jury that it could infer from the

prosecution's failure to produce a bank surveillance tape that such a tape would have

supported Atkins's defense of mistaken identity.[2]

_____

[2] Atkins's additional argument that the District Court placed the burden on him to prove that a surveillance video tape existed also fails. While the burden was on the government to explain to the Court why it did not produce the tape, *see Gov't of the Virgin Islands v. Testamark*, 570 F.2d 1162, 1165 (3d Cir. 1978), the government met this burden when it represented to the Court the circumstances of the missing tape and its efforts in locating the tape. Morever, the record shows that the District Court allowed Atkins to argue to the jury that it was the *government's* burden to prove that a tape did not exist. The District Court later reiterated to the jury that "the government has the sole, the only burden of proving this case. The defendant has no burden. He is not required to

Atkins next argues that his due process rights were violated when the District Court denied his motion to suppress two in-court identifications of him. Atkins asserts that the identifications resulted from procedures which were "unduly suggestive" and which "created a substantial likelihood of misidentification." Specifically, Atkins argues that the identifications made by the witnesses, both bank tellers who were working at the time of the robbery, were improperly made at a preliminary hearing because Atkins stood beside defense counsel while handcuffed, shackled, and wearing a red Allegheny County Jail jumpsuit.

We review a denial of a motion to suppress evidence "for clear error as to the underlying facts, but [will] exercise plenary review as to its legality in the light of the court's properly found facts." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) (quoting *United States v. Inigo*, 925 F.2d 641, 656 (3d Cir. 1991)).

We utilize a two-step analysis for determining whether an identification procedure violated a defendant's due process rights. *See United States v. Maloney*, 513 F.3d 350, 355 (3d Cir. 2008). First, we review whether the identification procedure was "unnecessarily suggestive." *Id*. If the identification procedure was unnecessarily suggestive, we then assess the reliability of the identification by reviewing the "totality of

---

offer any evidence. He is not required to prove anything in his defense. It is only the government who has the burden of proving the essential elements of the offense charged."

the circumstances." *Id.*; *United States v. Emanuele*, 51 F.3d 1123, 1130 (3d Cir. 1995). "A 'suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability'" in light of the totality of the circumstances. *Emanuele*, 51 F.3d at 1128 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977)).

Here, the parties and the District Court agree that the identification process was suggestive. Accordingly, we must ask whether the identifications met the requisite standards of reliability.

In assessing the reliability of an identification procedure, the totality of the circumstances analysis requires the Court to consider: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the witness' accuracy in the prior description of the criminal; (4) the witness' level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199 (1972); *Emanuele*, 51 F.3d at 1128.

We agree with Atkins that some of the *Biggers* factors weaken the reliability of the bank tellers' identifications. For example, both tellers – Tabatha Gross and Sonia McNary – testified that the entire robbery happened very quickly. McNary explained that Atkins was standing right next to her for "[p]robably no more than a minute because he was moving real fast." Gross stated that "he moved pretty quick." McNary also admitted

7

that she did not see his whole face because "he [had] on a hat and glasses." Moreover, both witnesses admitted that they were shocked and disoriented after the robbery. They also made mistakes in the accuracy of their initial descriptions of Atkins. Gross described the robber as "[black male] approx[imately] 6 ft. dark complexion, baseball cap, dark pants waering [sic] a yellow T shirt." McNary described the robber as "[black male], approx[imately] 5'7, 200 lbs., white and blue ball cap, wearing a yellow shirt and sun glasses." While Atkins is a black male, he is 5'11" and weighs 200 lbs. At the time of his arrest, he was wearing a yellow polo shirt instead of a t-shirt and did not have a hat or sunglasses in his possession.

The other *Biggers* factors, however, suggest that the witnesses' identifications were reliable. For instance, both witnesses had the opportunity to observe Atkins at close range despite the speed of the robbery. Gross testified that she was able to get a good look at him, including his face, when he was standing "[j]ust inches from [her]." She watched him walk past two tellers and then back to her and he was close enough that he bumped into her. McNary testified that she first saw Atkins standing behind the teller counter next to Gross. He later moved between her and another teller and was standing "a couple inches" from her, where she was able to look at him. While pulling money out of her drawer, Atkins told McNary "don't say nothing, don't move" and McNary later watched Atkins run past the window when he left the bank.

In their initial descriptions of Atkins, both witnesses accurately described him as a black male wearing a yellow shirt. They also testified that they were confident in their identifications of Atkins. Gross testified that "[e]ven if he didn't have a jump suit on, I still would have recognized him" at the preliminary hearing. McNary testified that she identified Atkins at the preliminary hearing because she "remembered seeing him at the robbery."

Accordingly, we are satisfied that the totality of the circumstances shows that there were sufficient indicia of reliability in the bank tellers' identifications. The witnesses saw Atkins from a close distance and paid attention to him, gave relatively accurate prior descriptions, and testified that they identified him based on their memory of him at the time of the robbery. Accordingly, the District Court did not err in applying the *Biggers* factors when it denied Atkins's motion to suppress the in-court identifications by two witnesses.

## IV.

Finally, Atkins argues that the District Court improperly sentenced him by: (1) failing to respond to his 18 U.S.C. § 3553 arguments; (2) giving the advisory Guidelines presumptive weight; and (3) imposing a sentence greater than necessary. We review Atkins's sentence for an abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

At sentencing, a district court must: (1) calculate the Guidelines range; (2) decide whether a departure under the Guidelines is appropriate; and (3) decide whether to vary from the Guidelines based on the relevant § 3553 factors. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Although courts must treat the Guidelines as advisory, they "are not 'required to routinely state by rote that they . . . know the sentencing guidelines are now advisory.'" *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006) (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006)). Instead, "the record must demonstrate that the trial court gave meaningful consideration to the § 3553 factors." *Cooper*, 437 F.3d at 329. "The court need not discuss every argument made by a litigant if an argument is clearly without merit." *Id*.

Our review of the record demonstrates that the District Court properly followed the procedure outlined in *Gunter* to determine Atkins's sentence. First, the parties agree that the District Court correctly calculated the applicable Guidelines range – 210 to 262 months – and that Atkins's 210 month sentence is at the low end of the range. Next, the District Court properly considered the § 3553 factors and explained that the Court's "job is to fashion a sentence that is sufficient but not greater than necessary to achieve the purposes of sentencing."

The District Court reviewed the "nature and circumstances of the offense," § 3553(a)(1), stating:

> here we have another bank robbery, which is a serious offense. . . . [A]ll the things that Mr. Burke said about the circumstances of the offense, the

10

location, Fifth Avenue Place, a busy corner at lunchtime, you know, lots of people around, make it even more serious because of the potential for someone being harmed. So the offense level given to this crime by the advisory guideline is an appropriate offense level.

The District Court then discussed the "history and characteristics of the defendant," § 3553(a)(1), noting that "what has happened is that you have spent 34 of the last 36 years in jail, and you are a career offender, so you are at the top of the list there and I have to consider that."

The District Court next discussed the need for the sentence to "afford adequate deterrence," § 3553(a)(2)(B), "protect the public," § 3553(a)(2)(C), and "provide the defendant with needed . . . treatment in the most effective manner," § 3553(a)(2)(D). The District Court questioned Atkins's ability to be deterred and stated that "it appears that the only way that the public can be protected is by incarceration." The Court concluded by stating that "the advisory guideline range is an appropriate range for your case because of all the factors that I have considered and all the things that I have just said. . . . You're old enough to make a decision this time as to whether or not you're going to die in prison or not, and my hope is that it's not. So I think the low end of the range at least gives you the opportunity to make that decision." The District Court's analysis was more than sufficient under *Gunter*.

Finally, we hold that the District Court did not abuse its discretion in rejecting Atkins's arguments that his "old" age (he was 52 years old when he committed the robbery and 57 years old when he was sentenced; accordingly, he will be approximately

11

70 years old if he serves the full 210 months) made his sentence "greater than necessary and unreasonable" in light of the aforementioned § 3553 factors considered by the Court.[3]

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[3] We also find no abuse of discretion in the District Court's refusal to uphold Atkins's suggestion that because he will likely receive a mandatory revocation of his parole for a crime committed in Louisiana, the Court should decrease his sentence to reflect his additional time of incarceration in Louisiana. Specifically, Atkins suggested that because he will likely serve 72 months on the mandatory state revocation in Louisiana, his sentence should be reduced by 72 months to a final sentence of 138 months. The District Court considered this argument and reasonably responded: "I'm not going to speculate on what Louisiana does. If I were a judge in Louisiana and looked at this federal sentence, I'd probably say what's the point of adding on? But I don't know these Louisiana judges. I don't know what they'll think."