**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3906
_____

UNITED STATES OF AMERICA

v.

JUSTIN CABOT,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cr-00458-001)
District Judge:  Honorable Susan D. Wigenton

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 26, 2012

Before:  FISHER and GREENBERG, *Circuit Judges*, and OLIVER, *District Judge.*[*]

(Opinion Filed:  July 19, 2012)
_____

OPINION OF THE COURT
_____

_____

[*] The Honorable Solomon Oliver, Jr., Chief Judge of the United States District
Court for the Northern District of Ohio, sitting by designation.

OLIVER, *District Judge*.

## I.

Appellant Justin Cabot ("Cabot") was sentenced to a term of imprisonment of 132 months after he pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). In this appeal, Cabot argues that the district court abused its discretion by unduly anchoring its sentence in the U.S. Sentencing Guidelines (the "Guidelines"), and thereby failed to arrive at a sentence that was "sufficient, but not greater than necessary" to meet the varied goals of sentencing as set forth in 18 U.S.C. § 3553(a). For the reasons that follow, we affirm.

## II.

Because we write primarily for the benefit of the parties, we assume familiarity with the facts and history of this criminal case, and discuss only those facts necessary to our analysis. On the afternoon of August 30, 2008, Cabot entered a bank in Linden, New Jersey, and approached a teller's window, where he slid a note to the teller stating, "No Ink Packets, No Alarms, No Locked Doors, Money Large to Small in bag & return note." (PSR ¶ 17.) The teller alerted a manager, who read the note and proceeded to take a plastic bag from Cabot and fill it with money. A customer at a nearby station observed the robbery as it was happening, called 911, and followed Cabot out of the bank. Upon observing Cabot jump into the backseat of his getaway car, which was driven by Jane Titus ("Titus"), Cabot's accomplice, the customer entered her own car and attempted to block the parking lot exit with her vehicle. Cabot escaped after Titus rammed the

2

customer's car numerous times. The customer, however, continued to follow the getaway car and remained on the phone with the police. Linden Police Department officers eventually cornered Cabot's getaway car in traffic, and recovered a clear plastic bag containing $804.00. Cabot was then arrested and taken into custody. On November 19, 2009, Cabot pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). Cabot's sentencing was delayed for a significant period of time, which allowed for the preparation of a thorough presentence investigation report ("PSR").

Based on his adult criminal history, which spanned approximately 15 years and included multiple robbery convictions, Cabot qualified as a career offender under the Guidelines. See U.S.S.G. § 4B1.1. His career offender classification resulted in an offense level of 29 and a criminal history category of VI, thus providing for a Guideline range of between 151 and 188 months. U.S.S.G. Ch.5, Part A. In the proceedings below, Cabot did not dispute that he qualified as a career offender, nor does he on appeal. However, because the Guidelines are advisory in nature, and because Cabot presented compelling evidence of rehabilitation, Cabot urged the district court to impose a sentence closer to his non-career offender Guideline range of 46 to 57 months.

Cabot's PSR showed that he was a 36 year old man, who had a troubled childhood marked by significant physical and mental abuse, first at the hands of his father, a Vietnam War veteran who suffered from post-traumatic stress syndrome and alcoholism, and then at the hands of his step-father, whom Cabot's mother married when Cabot was

3

12. Cabot's mother also suffered from drug and alcohol addiction. Before he was a teenager, Cabot developed substance abuse problems of his own, drinking liquor and experimenting with a number of heavy drugs. At age 20, he pled guilty to a series of robberies, and as a result, was incarcerated for the majority of his twenties. After his release, his interactions with the criminal justice system continued, culminating in the instant offense.

From the time of the arrest for his latest offense in August of 2008 to the time of his sentencing in September of 2011, however, Cabot made significant strides in overcoming his addictions and dealing with his anger and mental health issues. Prior to his sentencing hearing, Cabot submitted evidence showing that he was an active participant in twelve-step recovery and anger management programs and had used the lessons he had learned to impact others in positive ways. He submitted a number of exhibits to the court, including *inter alia*, letters of support from mental health professionals at Mercer County Corrections Center, where he was incarcerated, and letters from fellow inmates speaking to the support he had provided them on their own paths to recovery.

At his sentencing hearing, Cabot spoke eloquently about his capacity to contribute to society in light of his sobriety and progress. The Assistant U.S. Attorney acknowledged that Cabot had "had a very rough life," and stated that he was "impressed by Mr. Cabot," particularly by the fact that Cabot did not attempt to minimize his

criminal behavior, but instead "clearly took steps to correct his wrongdoings and what ultimately got him here, which is the drugs and the alcohol." (Sentencing Hr'g Tr. 23-24, Dist. Ct. Dkt. #55.) Based on the severity of his latest offense and Cabot's overall criminal history, however, the Assistant U.S. Attorney stated that "a Guideline range is appropriate." (Id. 26.) The district court was similarly "struck" by Mr. Cabot, id., and noted that "the person that committed this offense, appears to be a very different person today." (Id. 28.) After considering a number of factors, including Cabot's criminal history and the nature of his latest offense, the court concluded that a downward variance below the Guideline range was justified: "because of the person that I see today, because of the letters that were provided to the Court, and because of what you've said." (Id. 30.) The court varied from a Guidelines offense level of 29 to an offense level of 27, and imposed a sentence of 132 months, 19 months less than the lower end of his actual Guideline range. This timely appeal followed.

III.

We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We review the district court's sentence under an abuse of discretion standard. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). This Court has previously explained that, pursuant to United States v. Booker, 543 U.S. 220 (2005), district courts must follow a three-step process at sentencing:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker. (2) In doing so, they must

5

formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force. (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Fisher, 502 F.3d 293, 307-08 (3d Cir. 2007) (quoting United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006)).  Ordinarily, our review "begins by 'ensur[ing] that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'"  Tomko, 562 F.3d at 567 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)) (alteration in original).  Here, Cabot does not challenge his sentence on procedural grounds, and our independent review does not reveal any procedural error.  Thus, our discussion is limited to the substantive reasonableness of the sentence.  See Tomko, F.3d at 567-68; Gall, 552 U.S. at 51.

In reviewing the substantive reasonableness of the sentence, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range."  Gall, 552 U.S. at 51.  This Court has previously noted that "[s]ubstantive reasonableness inquires into whether the final sentence, wherever it may lie within the

6

permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." United States v. Doe, 617 F.3d 766, 770 (3d Cir. 2010) (internal quotation marks and citation omitted); see also United States v. Lessner, 498 F.3d 185, 204 (3d Cir. 2007) ("For a sentence to be substantively reasonable, the district court must apply the § 3553(a) factors reasonably to the circumstances of the case.").

In light of the sentencing court's superior position to find facts and determine their weight under § 3553(a), our substantive reasonableness inquiry "must be highly deferential." United States v. Merced, 603 F.3d 203, 214 (3d Cir. 2010) (citing Tomko, 562 F.3d at 568). This Court has further explained that "if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Tomko, 562 F.3d at 568.

IV.

On appeal, Cabot argues that the district court abused its discretion because, in granting a "modest downward variance," it "only gave a nod to the § 3553(a)[] factors" and thus imposed a substantively unreasonable sentence. (Appellant's Br. 26.) The record reflects otherwise.

As an initial matter, the district court made clear that it had the discretion to impose a sentence that is "sufficient but not greater than necessary" based on Cabot's history and personal characteristics, and not just on a "mechanical calculation about what

7

the appropriate sentence is." (Sentencing Hr'g Tr. 28.) The judge expressly considered the fact that Cabot had progressed considerably since entering his guilty plea, and took note of his "sincerity", id. 26, and various submissions to the court. The court's decision, however, "not to give such mitigating factors the weight that [Cabot] contends they deserve does not render [his] sentence unreasonable." Lessner, 498 F.3d at 204 (citation omitted). The judge was also mindful of her obligation to "promote respect for the law" and "to protect the public," and took note of "the fact that individuals who are very innocent were affected greatly . . . as a result of [Cabot's] actions." (Sentencing Hr'g Tr. 27-29.) Despite these concerns, the judge concluded that a downward variance from the Guidelines range was appropriate, and we find that such a variance was reasonable given the record before the district court. See Fisher, 502 F.3d at 308 ("[D]istrict judges are free to vary-one way or the other-from the advisory Guidelines, provided that those variations are reasonable under the circumstances.").

Even if a greater variance might have been justified in light of Cabot's significant progress, the "fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall, 552 U.S. at 51. In other words, "[a]s long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." United States v. Wise, 515 F.3d 207, 218 (3d Cir. 2008). Because

8

Cabot's sentence falls within this "broad range," and was based on a judicious consideration of the § 3553(a) factors, we find that it is substantively reasonable.[1]

The United States (the "Government") also construes Cabot's appeal as raising a claim of error rooted in policy-based disagreements with the career-offender Guideline, U.S.S.G. § 4B1.1, which Cabot asserts is "untethered to the goals of sentencing [of] . . . . just deserts, deterrence, and incapacitation," (Appellant's Br. 21), and with the federal sentencing scheme as a whole, which Cabot contends unduly "anchors a court to the guidelines calculation far more than any other factor a court must consider." (Id. 15.) Because Cabot did not raise such arguments below, the Government maintains that these arguments may only be reviewed for plain error. See United States v. Ward, 626 F.3d 179, 183 (3d Cir. 2010); Fed. R. Crim. P. 52(b). In order to prevail under plain error review, the defendant "must establish an error that is plain, which affected his substantial rights, and which, if not rectified, would seriously affect the fairness, integrity or public reputation of judicial proceedings." Ward, 626 F.3d at 183 (citation omitted).

However, we do not read Cabot's brief as raising a claim of error rooted in general policy-based disagreements. While much of Cabot's brief is devoted to critiquing the career offender guideline and the federal sentencing scheme generally, Cabot

---

[1] This Court's decision in United States v. Olshovsky, 562 F.3d 530 (3d Cir. 2009) is distinguishable. There, the Court found that a below-Guideline range sentence was nevertheless substantively unreasonable in light of a number of procedural errors by the district court, including "minimal consideration" of the defendant's mitigating evidence. Id. at 552-53. No such procedural errors were committed in this case.

9

nevertheless concedes that he "did not ask the sentencing court to disagree with the career offender guideline on policy grounds," and does not now "contend that the drastic career offender enhancements to criminal history and base offense level render the guideline unreasonable per se." (Appellant's Br. 28.)

In any event, even if Cabot were now, for the first time, challenging the application of the career offender guideline on policy grounds, the record in this case reveals no error, let alone plain error, on the part of the district court. This Court has explained that "*if* the District Court intends to vary downward based on a policy disagreement with § 4B1.1, it must . . . explain and justify that decision. . . . [through a] reasoned, coherent, and 'sufficiently compelling' explanation of the basis for the court's disagreement." Merced, 603 F.3d at 219-20 (quoting United States v. Lychock, 578 F.3d 214, 219 (3d Cir. 2009)) (emphasis in original).[2] However, a district court is not required "to reject a particular Guidelines range where that court does not, in fact, have disagreement with the Guideline at issue" or to "engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline." United States v. Lopez-Reyes, 589 F.3d 667, 671 (3d Cir. 2009) (citation omitted). And where, as here, the defendant did not raise policy-based reasons for varying from the

---

[2] In Merced, this Court declined to rule on the question whether district courts in fact have the authority to vary from the Guideline based on a policy disagreement with U.S.S.G. § 4B1.1, and assumed so based on the Government's concession of that point. Merced, 603 F.3d at 218-19. Nevertheless, we noted that the view that district courts may not vary from § 4B1.1 on policy grounds is "falling out of favor." Id. at 218.

10

Guideline range, the district court was "not required to manufacture grounds . . . not clearly raised on the record[.]" United States v. Dragon, 471 F.3d 501, 505 (3d Cir. 2006).

As noted above, the record reflects that the district court was well aware of the advisory nature of the Guidelines and its authority to vary from the Guideline range based on Cabot's individual circumstances. Indeed, the court imposed a sentence below the bottom end of Cabot's Guideline range based on evidence of rehabilitation. Moreover, Cabot's broader critique that the three-step sentencing process unduly "anchors a court to the guidelines calculation far more than any other factor a court must consider," is foreclosed by Booker and its progeny, which sets forth the three-step process district courts must follow in sentencing defendants. The Supreme Court has explained that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 552 U.S. at 49. Indeed, the failure to correctly calculate the Guideline range can constitute procedural error warranting vacatur of a sentence. See Merced, 603 F.3d at 214. However, as the Court has also explained, the Guidelines "are not the only consideration [;] . . . [the judge] must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50. The record reflects that the district court did, in fact, conduct such an individualized assessment. We therefore will affirm.

## V.

For the reasons stated above, we will affirm the sentence.