**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2742
_____

UNITED STATES OF AMERICA

v.

EDWIN FERNANDEZ,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-13-cr-00402-002)
District Judge:  Honorable Stewart Dalzell
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 17, 2016

Before:   AMBRO, NYGAARD and VAN ANTWERPEN, <u>Circuit Judges</u>.

(Filed: June 20, 2016)


_____

OPINION[*]
_____

_____

        [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7, does not constitute binding precedent.

VAN ANTWERPEN, <u>Circuit Judge</u>.

Edwin Fernandez appeals his conviction for one count of conspiracy to import five kilograms or more of cocaine in violation of 21 U.S.C. § 963, one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846, one count of importation of five kilograms or more of cocaine and aiding and abetting in violation of 21 U.S.C. §§ 952(a), 960(a) & (b)(1)(B)(ii) and 18 U.S.C. § 2, two counts of attempted possession with the intent to distribute five kilograms or more of cocaine and aiding and abetting in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and one count of attempted importation of five kilograms or more of cocaine and aiding and abetting in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2. Fernandez also appeals his sentence of 300 months' imprisonment and 120 months' supervised release. Fernandez raises two primary arguments: 1) the District Court erred in denying his Motion to Suppress the two cell phones, and the data they contained, retrieved after an unrelated arrest because the stop and arrest were merely pretextual and not supported by reasonable suspicion or probable cause, and 2) the United States Sentencing Guidelines ("Guidelines") sentence imposed by the District Court is substantively unreasonable. For the following reasons, we will affirm the judgment of conviction and sentence imposed by the District Court.

## I.

Beginning in August 2011, Edwin Fernandez and his coconspirators engaged in a scheme to import cocaine from Santo Domingo, Dominican Republic to Philadelphia, Pennsylvania. (Presentence Report "PSR" ¶¶ 11–12). The scheme used baggage handlers

2

employed by US Airways at Philadelphia International Airport to divert luggage containing the imported cocaine from international baggage claim to domestic baggage claim. (PSR ¶¶ 12–13). Fernandez and his coconspirators successfully imported cocaine through this scheme on five separate occasions in November and December 2011.[1] (PSR ¶ 13). On January 7, 2012, Rolston Abbott, a US Airways baggage handler involved in the conspiracy, was unable to divert cocaine imported through the scheme because of the presence of United States Customs and Border Protection officials. Customs officials discovered three bags containing approximately fifty-nine kilograms of cocaine. (PSR ¶ 14). Federal agents from Homeland Security Investigations discovered frequent cell phone communication between Abbott and Jose Rodriguez, Fernandez's coconspirator, as well as between Abbott and an unknown number in the Dominican Republic. (A-45–A-48). An analysis of the two cell phones utilized by Rodriguez revealed frequent contact on the day before and the day of the seizure with a number issued to "Fat Boy." (A-48). A subpoena response from Sprint on February 9th indicated that "Fat Boy" was Fernandez and provided his address. (A-115–A-116).

Concurrently, in January 2012, the Philadelphia Police Department Narcotics Field Unit ("PPD-NFU") received an anonymous tip regarding marijuana sales out of a residence at 5049 Lancaster Avenue. (A-48). On two separate occasions, PPD-NFU officers conducting surveillance at that address observed an individual named Frederick

---

[1] Subsequent to the January 7th seizure by Custom and Border Patrol officials, Fernandez and his coconspirators attempted twice, unsuccessfully, to import cocaine again through the scheme. (PSR ¶¶ 15–16).

Foster leave the residence, drive to another location, and meet with individuals who entered his vehicle briefly. (A-48–A-49). On February 1, 2012, the second day of surveillance, officers observed Foster leave the residence with a small black bag, drive to meet a male, later identified as Jeffrey Burns, who entered Foster's car briefly before re-entering his own. (A-80–A-81). When officers approached Burns' vehicle they saw what they believed to be marijuana in plain view and placed Burns under arrest. (A-81).

On February 7, 2012, PPD-NFU officers on surveillance at 5049 Lancaster Avenue observed Foster again leave the residence with a black bag and drive to a lunch truck which Fernandez operated. (A-82). Officer Jose Candelaria followed Foster and observed the following without obstruction. (A-83). Foster exited his vehicle and engaged in a brief conversation with Fernandez, at the conclusion of which Fernandez handed Foster money in exchange for the black bag Foster had brought from his residence. (A-83–A-84). Believing that he had just seen a narcotics transaction, Officer Candelaria and a fellow PPD-NFU officer stopped and arrested Fernandez.[2] (A-84–A-85). Incident to the arrest, the officers recovered the black bag, which contained small, clear baggies of marijuana totaling 125.2 grams, approximately $2,700 in cash, and two cell phones. (A-84–A-86). Approximately seven months later, federal agents discovered Fernandez's role in the drug importation scheme and secured search warrants for the cell phones seized at the time of his arrest by the PPD. (A-52–A-53).

---

[2] Fernandez pleaded guilty to intentional possession of a controlled substance in Philadelphia County Municipal Court and received one-year of probation. (PSR ¶ 38).

4

A grand jury returned a superseding six-count indictment charging Fernandez with the counts described *supra*. (PSR ¶ 4). Fernandez filed a Motion to Suppress the cell phones and the data from the phones recovered subsequent to his February 7th arrest by PPD-NFU. (A-41–A-43). The United States District Court for the Eastern District of Pennsylvania (Dalzell, J.) denied the motion after a hearing, finding that the arrest was supported by probable cause, that the cell phones were properly seized incident to the lawful arrest, and that the phones were searched pursuant to a lawfully obtained warrant. (A-2, A-125–A-127). Fernandez pleaded guilty to all six counts. (Supp. App. 58–Supp. App. 81). The District Court (Dalzell, J.), sentenced Fernandez to 300 months' imprisonment and 120 months' supervised release. (A-3–A-5). This timely appeal followed. (A-1).

## II. [3]

### A.

We review the denial of a motion to suppress under a mixed standard of review. *United States v. Lewis*, 672 F.3d 232, 236–37 (3d Cir. 2012). We exercise plenary review over legal determinations and clear error review for factual findings. *Id* at 237. We exercise plenary review over an officer's reasonable suspicion or probable cause determination. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

A warrantless arrest "is reasonable under the Fourth Amendment where there is

---

[3] The District Court had jurisdiction over Fernandez's case pursuant to 18 U.S.C § 3231. We have jurisdiction to review final orders of a district court pursuant to 28 U.S.C. § 1291 and jurisdiction to review the sentence the District Court imposed pursuant to 18 U.S.C § 3742.

probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). On appeal, our task is "to determine whether the facts available to the officers at the moment of the arrest" would allow a reasonable person to find that probable cause, as defined above, existed. *Beck v. Ohio*, 379 U.S. 89, 96 (1964).

While probable cause is a determination only courts can ultimately make, we give deference to the "on-the-scene conclusion[s]" of officers. *Myers*, 308 F.3d at 255. In reviewing these conclusions, we must consider the demands officers face, in which they may "draw inferences and make deductions . . . that might well elude an untrained person." *Id.* (alteration in original) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)) (internal quotation marks omitted). The subjective motivations of an officer do not render an arrest unconstitutional if it is supported by probable cause. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Fernandez asserts that the District Court erred by denying his Motion to Suppress because the arrest was pretextual and not supported by probable cause. (Appellant's Br. 15–20). For a pretextual arrest to conform to the protections afforded by the Fourth Amendment, Fernandez maintains that the arresting officers must have observed an actual violation of the law, which he contends they did not. (*Id.* at 13). The Government points to the officers' investigation, including surveillance of Foster, and Officer

6

Candelaria's observation, based on his fifteen years of narcotics experience, as supporting probable cause to arrest.[4] (Government's Br. 19–20). Even if it was pretextual, the Government asserts that because the arrest was supported by probable cause, there is no Fourth Amendment violation. (*Id.* at 23–24).

The District Court denied Fernandez's Motion to Suppress, finding probable cause to arrest. (A-125–A-126). The District Court also found that the cell phones were seized pursuant to a search incident to lawful arrest, provided for by the Supreme Court in *Arizona v. Gant*, 556 U.S. 332 (2009), and not searched until this warrant was secured (A-126).

We can easily conclude that the District Court properly denied Fernandez's Motion to Suppress. The facts elicited through Officer Candelaria's testimony at the hearing establish that he had probable cause to arrest under this Court's precedent. (A-78–A-85). At the time of the arrest, Officer Candelaria articulated that he believed, based on his fifteen years of experience in narcotics, that he had just witnessed a narcotics transaction. (A-84), Officer Candelaria based this this belief not only on his observation, but also on the information he learned about Foster through Officer Elliot, who was leading the investigation. (A-84). Officer Candelaria's observations matched the information he received from Officer Elliott regarding Foster's narcotic transaction practices. As this Court has acknowledged, Officer Candelaria correctly relied on the

---

[4] At the time of the Motion to Suppress hearing Officer Candelaria was a nineteen-year veteran of the PPD. (A-78). Officer Candelaria had been in the PPD-NFU since 2005, prior to which he served in the PPD's Narcotics Strike Force for five years. (*Id.*).

information obtained through this investigation because the "collective knowledge" doctrine applies. *United States v. Whitfield*, 634 F.3d 741, 745–46 (3d Cir. 2010). Under this doctrine, "the knowledge of one law enforcement officer is imputed to the officer who actually conducted the . . . arrest." *Id.* at 745.

Fernandez has failed to point to any evidence to support his assertion that the arrest was pretext for the PPD to secure his cell phones for the federal investigation. (Appellant's Br. 14). Testimony from two PPD officers and a federal agent, which the District Court found credible, indicated that there was no interaction between the two entities prior to September 2012, nearly seven months after Fernandez's arrest. (A-102–A-105). Federal agent Brian Ressler testified that Fernandez had not been identified as a coconspirator in the cocaine importation scheme at the time of his arrest by the PPD. (A-108). The subpoena response from Sprint which identified Fernandez as a contact from Rodriguez's phone came two days after the PPD arrest. (A-115–A-116). As the District Court noted, while the chronology of events might invite conjecture, the record indicates that the federal agents and the PPD acted properly as "two sovereigns." (A-125.). Even assuming, *arguendo*, that Officer Candelaria arrested Fernandez to advance the federal investigation, the District Court properly denied the Motion to Suppress because it correctly determined that probable cause to arrest existed based on the totality of the circumstances. *See United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006) (quoting *Whren*, 517 U.S. at 813, for the proposition that the Supreme Court "ha[s] been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers") (internal quotation marks omitted).

8

Fernandez's contention that Officer Candelaria's observation could not give rise to probable cause to arrest because the interaction between Foster and Fernandez could have been an innocent one is unavailing. (Appellant's Br. 17). We do not consider whether probable cause existed based on a single aspect of an arrest. Rather, we apply a totality-of-the-circumstances approach to determine whether the collective facts available to the officer constituted probable cause. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983). We have no difficulty concluding on these facts that there was probable cause to arrest Fernandez.

**B.**

We review the sentence imposed by a district court for abuse of discretion, which is limited to determining whether the sentence is reasonable. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Tomko*, 562 F.3d 558, 564–65 (3d Cir. 2009) (en banc).

Our reasonableness review is comprised of both a procedural and a substantive element. *United States v. Lychock*, 578 F.3d 214, 217 (3d Cir. 2009). The party challenging the reasonableness of the sentence bears the burden of demonstrating unreasonableness. *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007). Because we are satisfied that the sentence at issue meets the requirements of procedural reasonableness, we focus on the substantive reasonableness of the sentence, which Fernandez challenges on appeal. For our review of substantive reasonableness, we "take into account the totality of the circumstances." *Gall*, 552 U.S. at 51. A sentence outside the Guidelines is substantively reasonable if, based on the sentencing judge's

9

"individualized assessment based on the facts presented," there is a "justification [that] is sufficiently compelling to support the degree of the variance." *Id.* at 50. We have stated that "a district court's failure to give mitigating factors the weight a defendant contends they deserve [does not] render[] the sentence unreasonable." *Bungar*, 478 F.3d at 546. A within-Guidelines sentence may be presumed reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007).

If a sentence is outside the Guidelines range, we "must give due deference to [a] district court's decision that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance."[5] *Gall*, 552 U.S. at 51; *see United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007). We may not reverse simply because we "might reasonably have concluded that a different sentence was appropriate." *Gall*, 552 U.S. at 51. Only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided" will we reverse. *Tomko*, 562 F.3d at 568.

Fernandez asks this Court to vacate and remand for resentencing on the basis that the District Court erred in failing to adequately consider mitigating factors which he

---

[5] 18 U.S.C. § 3553(a) sets forth the factors a district court must consider in imposing a sentence. These include, in relevant part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . .; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established . . . ; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

asserts should reduce his sentence. (Appellant's Br. 22–23). Two factors merit a reduced sentence according to Fernandez: the nonviolent nature of the charged offenses and the low rate of recidivism for men the age Fernandez will be when released from prison. (*Id.*). Fernandez asserts that the mandatory minimum of 240 months' imprisonment sufficiently addresses the aims of the Sentencing Guidelines. (*Id.*). The Government maintains that the sentence is reasonable based on the facts of this case, which the District Court adequately applied to the 18 U.S.C. § 3553(a) factors. (Government's Br. 27).

At sentencing, the District Court correctly calculated Fernandez's Guideline range as 324 to 435 months' imprisonment.[6] (A-142). The District Court also noted that, pursuant to the information the Government filed charging a prior drug trafficking conviction, the mandatory minimum was 240 months' imprisonment under 21 U.S.C. § 851. (A-142); (PSR ¶ 2). Weighing the facts of the case, the District Court imposed a below-Guidelines sentence of 300 months' imprisonment. (A-176–A-177).

Fernandez's assertion that the below-Guidelines sentence is greater than necessary to accomplish the goals of sentencing for the charged offenses is unpersuasive. The District Court's statement of reasons evinced a reasonable application of the 18 U.S.C. § 3553(a) factors, such as: Fernandez's age, his "relatively modest criminal history," and

---

[6] After initially referencing the Guidelines range calculated by the Probation Office as 324 to 405, the District Court misspoke and indicated the upper end of the range to be 435. *Compare* (A-142), *with* (A-177); (PSR ¶ 88). Because the misstatement of the upper end of the range did not impact the District Court's reasoning in anyway and the sentence imposed is below-Guidelines range, this is harmless error.

"expressions of remorse" along with the "very serious criminality" of the instant offenses and Fernandez's "perjur[y] . . . at the expense of his seasoned former counsel."[7] (A-177). This well-reasoned application of "the § 3553(a) factors . . . to the circumstances of the case" satisfies our requirement for substantive reasonableness. *Lessner*, 498 F.3d at 204.

Simply because Fernandez wishes that the District Court had imposed a lower sentence does not render its sentence an abuse of discretion. Fernandez asks this Court to disregard the deference afforded a sentencing judge without articulating how this below-Guidelines sentence is substantively unreasonable. Asserting that the District Court did not give enough weight to arguments for further leniency is insufficient under our precedent. (Appellant's Br. 22–23). We give due deference to the weight the District Court applied to the sentencing factors and its consideration of Fernandez's arguments for further downward variance. *See Tomko*, 562 F.3d at 561; *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (noting that "we afford deference to the District Court because it is in the best position to determine the appropriate sentence in light of the particular circumstances of the case") (internal quotation marks omitted). Here, the record demonstrates that the District Court considered the mitigating factors in imposing a sentence that, "while slightly below the Advisory Guideline range, is nevertheless a

---

[7] Initially Fernandez pleaded not guilty. (Supp. App. 80). He changed his plea to a conditional plea following a hearing at which he testified in support of his motion to limit the Government's use of his previously made proffers on the ground that his former counsel did not adequately explain the ramifications. (Supp. App. 54–Supp. App. 80). Fernandez's former counsel testified to the full explanations he provided about the proffer statements, which Fernandez denied ever receiving. (Supp. App. 10–Supp. App. 23). Characterizing the "credibility contest" between Fernandez and his former counsel as "not even close," the District Court denied the motion. (Supp. App. 45–Supp. App. 46).

serious number." (A-176). We decline to find that the District Court's imposition of 300 months' imprisonment is substantively unreasonable.

## III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence imposed by the District Court on July 17, 2015.